IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 09-273; 10-21 |
| v. | ) | |
| | ) | |
| MICHAEL DWAYNE BLACKWELL | ) | |
| a/k/a Kevin Campbell | ) | |
| ERIN HOUSE | ) | |

**GOVERNMENT'S OMNIBUS RESPONSE TO
DEFENDANTS' PRETRIAL MOTIONS**

AND NOW comes the United States of America, by its attorneys, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Amy L. Johnston and Troy Rivetti, Assistant United States Attorneys for said district, and files the following Omnibus Response to Defendants' Pretrial Motions:

**I.   Introduction and Procedural Overview**

On December 8, 2009, a five (5) count Indictment was returned by the Grand Jury charging eight (8) defendants with violations of the federal drug laws (Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(C)). The charges were the result of a lengthy multi-agency wiretap investigation of Darnell Martin, Arnold Jeffrey Sayles a/k/a Jeff Sayles, Michael Dwayne Blackwell a/k/a Kevin Campbell, and their drug-trafficking associates. Count One of the indictment charged all eight (8) of the defendants with conspiracy to distribute five (5) kilograms or more of cocaine, in violation of federal law. The remaining four (4) counts of the indictment contain related drug-

trafficking charges.

Prior to the filing of the superseding indictment at Criminal No. 09-273, Defendant House filed various motions for transfer of a pending case filed at Case No. 1:09CR436 in the Northern District of Ohio regarding defendant House. (See Dkt. Nos. 52, 53, 54, and 94 at Crim. No. 09-273). Defendant Blackwell joined the motions. (See Dkt. Nos. 95, 96 at Crim. No. 09-273). Ultimately, the pending case from the Northern District of Ohio was transferred to the Western District of Pennsylvania and ultimately docketed at Criminal No. 10-21[1]. Subsequently, Crim. No. 09-273 was consolidated with 10-21 pursuant to an Order from this Court. (See Dkt. No. 232 at Crim. No. 09-273).

During the past year, two (2) defendants (Darnell Martin and Daryl Anderson) have pleaded guilty before this Court. Charges remain pending against six (6) defendants, however, four (4) defendants (Arnold Jeffrey Sayles, Raheem Muhammad, Bryant Harper, and Isaiah Warren) are set to change their pleas to guilty on or before the date of the pre-trial motions hearing in this matter

---

[1]   On October 7, 2009, a nineteen (19) count indictment was returned by a Grand Jury against three (3) defendants with violations of federal drug laws. Defendants Blackwell and House were charged in some of those counts. Specifically, defendant Blackwell was charged in Counts 1-4 and 6-8 with violations of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A); and Title 18, United States Code, Sections 1952 and 2. Specifically, defendant House was charged in Counts 1, 3, 5 and 6-8 with violations of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(A); and Title 18, United States Code, Sections 1952 and 2. (Dkt. No. 1 at Crim. No. 10-21).

that is currently set for May 17, 2011. Consequently, that leaves outstanding pre-trial motions from two (2) defendants (Michael Dwayne Blackwell a/k/a Kevin Campbell and Erin House) for this Court to consider.

At Criminal No. 09-273, defendant Blackwell has filed a motion for Joinder to Defendant Erin House's Motion to Compel Photographs and Related Documents (Dkt. No. 327); motion for Joinder to Defendant Erin House's Motion to Exclude Cooperating Witness Testimony and Request for a Reliability Hearing (Dkt. No. 328); motion for Joinder to Defendant Erin House's Motion for Production of Exculpatory Material (Dkt. No. 329); motion for Joinder to Defendant Erin House's Motion to Suppress Illegally Obtained Wiretap and Tracking Location Evidence and All Direct and Indirect Fruits (Dkt. No. 348); and Motion to Adopt other Motions filed in Case No. CR-10-021 JFC (Dkt. No. 349).

At Criminal No. 10-21[2], defendant Blackwell has filed a Motion to Suppress Evidence of Illegal Search; Memorandum of Points and Authorities (Dkt. No. 25); Motion to Suppress Evidence of Illegal Search (DKt. No. 26); Memorandum in Support of Motion to Suppress Evidence of Illegal Search (Dkt. No. 27).

At Criminal No. 09-273, defendant House has filed a Motion to Compel Discovery and Incorporated Memorandum of Law (Dkt.

---

[2] Defendant Blackwell also attempted to file a motion at Dkt. No. 24 at Crim. No. 10-21. It appears, however, that the document was not properly filed; but this motions seems to be encompassed in Dkt. Nos. 25, 26, and 27 regardless.

No. 192); Motion to Exclude Cooperating Witness Testimony and Request for a Reliability Hearing and Brief in Support of Motion to Exclude Cooperating Witness Testimony and Request for a Reliability Hearing (Dkt Nos. 307,308); Motion for Production of Exculpatory Material and Brief in Support of Motion for Production of Exculpatory Material (Dkt. Nos. 310, 311); Motion to Compel Photographs and Related Documents (Dkt. No. 312); Motion to Suppress and Brief in Support of Motion to Suppress (Dkt. Nos. 313, 314); and Supplemental Motion to Suppress (Dkt. No. 333).

At Criminal No. 10-21. Defendant House has filed a Motion to Adopt Motions Filed in Related Case at Case No. 09-273 as if Filed in this Case (Dkt. No. 18) and Motion to Join in Motion to Suppress and Supporting Brief Filed at Docket Nos. 24-27 in Case No. 10-21, as is Applicable to Erin House (Dkt. No. 29).

This pleading sets forth the government's omnibus response to defendants' pretrial motions.

## II. __Response to Defendants' Motions__

1. **Discovery Motions[3] (Dkt. Nos. 192, 310, 311, 312 at**

---

[3] Defendant House attaches numerous exhibits to both Doc. Nos. 192 and 313, which are in **violation** of the Order of Court issued by the Honorable David S. Cercone regarding the disclosure and appropriate use of the Title III documents and audio recordings in this matter (A copy of Judge Cercone's Order is set forth in the Government's Appendix as Exhibit 13). The Order, in pertinent part, reads as follows: "It is further ORDERED that the United States and the parties to related criminal cases may use and refer to matters filed at the above captioned Miscellaneous Nos. in hearings and pleadings and otherwise in connection with

**Crim. No. 09-273)**

This Court issued an Order directing the government to respond to Dkt. No. 192(Motion to Compel Discovery and Incorporated Memorandum of Law). The government filed its response to Dkt. No. 192 on February 9, 2010 (Dkt. No. 201 at Crim. No. 09-273). A hearing was held on April 7, 2010 addressing the motion filed at Dkt. No. 192. This Court issued an Order directing the government to respond to Dkt. Nos. 310 (Motion for Production of Exculpatory Material) and 312 (Motion to Compel Photographs and Related Documents). The government filed its response to Dkt. Nos. 310 and 312 on October 13, 2010 (Dkt. Nos. 331, 332 at Crim. No. 09-273). A hearing was held on October 18, 2010 addressing the motions filed at Dkt. Nos. 310 and 312. Pursuant to another Order issued by this Court (Dkt. No 345), the government filed a Status Report Regarding Discovery on November 5, 2010 (See Dkt. No. 346). Neither Defendant House nor Blackwell has filed any supplemental motions regarding discovery since the hearing held on October 18, 2010. Consequently, the government incorporates by reference its earlier responses regarding discovery filed at Dkt. Nos. 201, 331, 332, and 346 and believes that it has fully complied with its discovery obligations.

---

the criminal cases. **However, any documents which have been filed under seal in this matter are to be filed under seal in connection with the criminal cases as well.** Counsel for defendant House was provided with a copy of the disclosure Order on September 30, 2009.

### 2.   Defendant House's Motion to Exclude Cooperating Witness Testimony and Request for Reliability Hearing (Doc. No. 307)

Defendant House asserts that the "affidavits establishing the basis for seizure of nearly all the evidence in the case are based on the statements of a number of unidentified informants and cooperators." Doc. No. 307, p. 1. **House is incorrect.** The affidavits, for the most part, are based on wiretap intercepts and agent surveillance.

House assumes that "the government will rely upon some or all of these compensated informants at trial to prove their case." Id. **House is incorrect.** At present, the United States intends to call very few, if any, "informants" as trial witnesses.

In his supporting brief, House claims that "several courts have mandated pre-trial, reliability hearings to permit evaluation of the reliability of compensated witnesses..." See Doc. No. 308, p. 1. **Defendant House's brief fails to cite a single federal case that stands for that proposition.**

As explained in the government's response to defendants' discovery requests (See Dkt. No. 201 at Crim. No. 09-273, to the extent that defendant is requesting disclosure of evidence that may be used to discredit the government's witnesses, such information, to the extent that it exists and is known to the government, will be provided with the Jencks Act materials for each trial witness.

Defendant House's motion for a pretrial "reliability hearing"

6

finds no basis in the law, and it should be denied.

### 3. Motion to Suppress Evidence of Illegal Search and Brief in Support (Doc. No. 24, 25, 26, 27 at Crim. No. 10-21)

Defendants House and Blackwell ask this Court to suppress evidence seized from a garage located at 19810 Mile Road, Cleveland, Ohio. The motion, in part, is based upon an erroneous assumption that the warrant for that garage was an "anticipatory" search warrant. For the reasons explained below, defendants House and Blackwell are not entitled to an evidentiary hearing on their motion, they lack standing to contest the search of the garage, the warrant was not an "anticipatory" warrant, and the motion, in any event, lacks any merit. The motion should be denied.

### A. Defendants are not Entitled to an Evidentiary Hearing on the Motion to Suppress

Courts of appeals have long and repeatedly held that "evidentiary hearings on motions to suppress are not granted as a matter of course," but are held "only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004) (citations and internal quotations omitted); accord Wright et al., 3A Federal Practice & Procedure:

Criminal, at § 675 pp. 385-87 & nn.3-4; 27 Moore's Federal Practice at § 641.193[2] & n.1; see also  United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996); United States v. Richardson, 764 F.2d 1514, 1528 (11th Cir. 1985); United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983); United States v. Culotto, 413 F.2d 1343, 1345 (2d Cir. 1969); Cohen v. United States, 378 F.2d 751, 761 (9th Cir. 1967).

This widely-accepted standard is justified by the need to avoid convening unnecessary evidentiary hearings that waste scarce judicial resources and misuse the hearing as a tool to preview the trial evidence.  "Hearings on motions to suppress are not discovery proceedings."  United States v. Harrelson, 705 F.2d 733, 738 (5th Cir. 1983).  As the First Circuit emphasized:

> It is self-evident that "[d]istrict courts are busy places and makework hearings are to be avoided." It follows that, like other litigants, a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion.... A district court is not obligated to schedule an evidentiary hearing on the basis of conclusory allegations, vague insinuations, unsupportable inferences, rank speculation, opprobrious epithets, or any combination of the foregoing.

United States v. Panitz, 907 F.2d 1267, 1273-74 (1st Cir. 1990) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978); other citations omitted).

In Franks, the Supreme Court explicitly expressed these concerns with respect to search warrants: "To mandate an

evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."   438 U.S. at 171.   "The requirement of a substantial preliminary showing" is necessary "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Id., at 170.

As explained below, defendants have failed to present definite, specific, detailed facts which would justify relief in the form of suppression, and the motion should be denied without an evidentiary hearing.

### B.   Defendants Have Failed to Establish that they Have a Reasonable Expectation of Privacy in the Garage (i.e., They Lack Standing to Contest the Search)

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. United States, 394 U.S. 165, 171-72 (1969).   Accord United States v. Padilla, 508 U.S. 77, 81 (1993) ("It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure.)".

Defendants have the burden of demonstrating that their own

Fourth Amendment rights have been violated. United States v. Salvucci, 448 U.S. 83, 95 (1980).

Here, defendants Blackwell and House have failed to allege, much less prove, that they have "standing" to challenge the admission of evidence seized from the garage located at 19810 Miles Road, Cleveland, Ohio. In other words, they have failed to prove that they had a subjective and reasonable expectation of privacy in the area searched or the evidence seized from 19810 Miles Road. See United Salvucci, 448 U.S. at 91; Rakas v. Illinois, 439 U.S. 128, 134 (1978); United States v. Samboy, 433 F.3d 154, 161-62 (1st Cir. 2005) (no reasonable expectation of privacy in apartment in which defendant could not establish possessory interest); accord Padilla, 508 U.S. at 81. As such, no hearing is warranted on defendant's motion.[4]

Recently, in United States v. Stearn, 597 F.3d 540 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit held, among other things, that the district court could **not** order suppression of evidence without regard to the defendant's ability to demonstrate a legitimate expectation of privacy in locations searched. In order to "invoke" the Fourth Amendment's exclusionary rule, "a defendant must demonstrate that his **own** Fourth Amendment rights were violated by the challenged search or seizure."

---

[4] The government does not concede standing in this matter. Steagald v. United States, 451 U.S. 204, 209 (1981) (failing to raise the issue of standing may preclude this argument on appeal).

<u>Stearns</u>, <u>supra</u> at 551, <u>citing</u> <u>Rakas</u>, 439 U.S. at 132-34 (emphasis added).  These rights are violated **only** if "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect."  <u>Id.</u> <u>quoting</u> <u>Rakas</u> at 140 (emphasis added).

Significantly, a defendant's Fourth Amendment rights are not violated by the introduction of evidence obtained in violation of a third party's right.  <u>Id.</u> <u>citing</u> <u>Rakas</u> at 134.  Because Fourth Amendment rights are "personal" (<u>id.</u> <u>citing</u> <u>Rakas</u> at 139), the proponent of a motion to suppress "bears the burden of proving not only that the search ... was illegal, but also that he had a legitimate expectation of privacy in [the place searched]."  <u>Id.</u> <u>quoting</u> <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104 (1980).  "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated."  <u>Id.</u> <u>quoting</u> <u>United States v. Mosley</u>, 454 F.3d 249, at 253 n.5 (3d Cir. 2006).[5]

In particular, to establish "standing" under the Fourth Amendment, defendants would be required to demonstrate either a

---

[5]   The Court of Appeals in <u>Stearn</u> found that the District Court ignored the directives of <u>Rakas</u> in that it failed to limit the exclusionary remedy to individuals whose own Fourth Amendment rights have been violated.  <u>Stearn</u>, <u>supra</u> at 552 <u>citing</u> <u>Rakas</u>, 439 U.S. at 139.  "For nearly forty years, the Supreme Court has unwaveringly required the proponent of a motion to suppress to 'assert[] his own legal rights and interests rather than basing his claim for relief upon the rights of third parties.'" <u>Id.</u> <u>e.g.</u> <u>Rakas</u> at 139.  The <u>Stearn</u> Court went on to write: "This is black-letter law." <u>Id.</u>

legitimate property interest in the area searched, or a legitimate expectation of privacy there.  See Padilla, 508 U.S. at 81-82 (expectations of privacy and property interests govern the analysis of Fourth Amendment search and seizure claims); Rakas, 439 U.S. at 148 (passengers in car have no legitimate expectation of privacy in glove compartment or in area under seat of car in which they were merely passengers).  Here, defendants can establish neither.

The Supreme Court has clarified that "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a legitimate expectation of privacy that has been invaded by the government action."  Smith v. Maryland, 442 U.S. 735, 740(1979)(citations omitted).  This inquiry "normally embraces two discrete questions."  Id.  First, whether the individual, "by his conduct, has 'exhibited an actual (subjective) expectation of privacy,'...whether...the individual has shown that 'he seeks to preserve [something] as private.'"  Id.(citation omitted).  Second, whether "the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable," ...whether,...the individual's expectation, viewed objectively, is 'justifiable' under the circumstances."  Id.(citations omitted).

The Supreme Court in United States v. Jacobsen, 466 U.S. 109 (1984), further explained these principles:

> The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere

12

> expectation, however well justified, that certain
> facts will not come to the attention of the
> authorities. ...
>
> Obviously, however, a 'legitimate expectation
> of privacy by definition means more than a
> subjective expectation of not being discovered. A
> burglar plying his trade in a summer cabin during
> the off season may have a thoroughly justified
> subjective expectation of privacy, but it is not
> one which the law recognizes as 'legitimate.' His
> presence in the words of Jones [v. United States,
> 362 U.S. 257, 267(1960)] is 'wrongful,' his
> expectation [of privacy] is not 'one that society
> is prepared to recognize as '"reasonable."''

466 U.S. at 122 & n.22(citations omitted); accord Hudson v. Palmer, 468 U.S. 517, 525(1984) (defendant must show that expectation is one that "society is prepared to recognize as reasonable"; prisoner has no expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches).

With respect to business premises, the law is clear that "[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property. 'An expectation of privacy in commercial premises, ... is different from, and indeed less than, a similar expectation in an individual's home.'" Minnesota v. Carter, 525 U.S. 83, 90(1998). Cf. United States v. Judd, 889 F.2d 1410, 1413 (5th Cir. 1989) (President and Vice President of corporation lacked standing to challenge seizure of records from corporate bookkeeping office in which neither worked, notwithstanding that president was involved with preparation of some of records seized from the office).

In addition, ownership of property does not necessarily

confer "standing" to challenge a search. "While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of this Court's inquiry." Salvucci, 448 U.S. at 91 (citation omitted). Rather, "an illegal search only violates the rights of those who have a 'legitimate expectation of privacy in the invaded place.'" Id. (citations omitted).

In the instant case, a search warrant was executed on September 13, 2009, at a garage located at 19810 Miles Road, Cleveland, Ohio. The search warrant was applied for and received on September 3, 2009. A copy of that warrant is set forth in the Government's Appendix as Exhibit 1. Christopher C. Kopp, Special Agent with the Federal Bureau of Investigation, was the affiant. The Honorable William H. Baughman, Jr. was the issuing United States Magistrate Judge sitting in the Northern District of Ohio.

As noted at the outset, defendants Blackwell and House have failed to prove standing; nor could they. As set forth in Exhibit 2 of the Government's Appendix, the Lease Agreement for the property located at 19810 Miles Road does not list either Blackwell or House as "lessees" to that particular property.

Pursuant to the foregoing, defendants Blackwell and House have not made the requisite showing that they have standing to challenge the search at issue, and the motion to suppress should

be denied on that basis alone.

## C.   The Search Warrant for 19810 Miles Road was not an "Anticipatory" Search Warrant

Defendants assert that the search warrant for 19810 Miles Road was an "anticipatory" search warrant.[6]  The defendants go on to argue that the affidavit for the warrant did not show probable cause that contraband was on a "sure course" to the place to be searched.  A review of the warrant affidavit, however, reveals that the warrant was not an "anticipatory" warrant.  As a result, defendants' arguments are completely misplaced.

The warrant affidavit (set forth as Exhibit 1 in the Government's Appendix) details the ongoing criminal activity revealed by the wiretap investigation.  The affidavit also explains the agent's determination that there was probable cause to believe  (based upon the agent's training and experience, as well as the investigation to date) that there presently was evidence of drug-trafficking – including scales, packaging paraphernalia, cash, money counters, etc. – located at the garage. See paragraphs 98, 99 and 100.  Further, the Magistrate Judge's finding, as set forth on the face sheet of the warrant, was that the affidavit had established "probable cause" to search the

---

[6]   See United States v. Grubbs, 547 U.S. 90, 94 (2006) (an anticipatory warrant is based upon affidavit showing probable cause that "'at some future time (but not presently) certain evidence of crime will be located at a specified place,'" and the warrant's execution is subject "to some condition precedent other than the mere passage of time – a so-called 'triggering condition'").

premises, and that the warrant had to be executed within 10 days (i.e., on or before 9/13/09).[7]  Accordingly, the warrant was <u>not</u> an anticipatory warrant, and defendants' arguments in this regard are simply incorrect.[8]

In their motion, defendants further make the bald assertion that the "agents intentionally misrepresented material facts critical to the  probable cause determination..."  Specifically, defendants allege that "the affiant omitted from his affidavit the fact the these telephone calls took place several months before the June 11 stop."  The defendants go on to allege that "the affiant also misstated that Mr. Paul claimed he was traveling to Cleveland - which is not true - Mr. Paul was traveling to Columbus."

Although not well-articulated by defendants, they may in fact

---

[7]  The only mention in the affidavit of any anticipated "triggering" event (as set forth in paragraph 101) concerned the agent's belief that the next shipment of cocaine might arrive after 10:00 p.m., that the agents would like to execute the warrant in conjunction with the arrival of the next drug shipment; in such circumstances, it might become necessary to execute the warrant during nighttime hours.  For those reasons, the agent requested permission to execute the warrant at any time of day or night, and the Magistrate Judge granted that request. The United States notes that defendants have not contested the propriety of "nighttime" authorization, and that, in any event, the warrant in question was executed during the afternoon hours.

[8]  Alternatively, in the event that this Court were to conclude that the warrant was an "anticipatory" search warrant – which the United States does <u>not</u> concede – the United States notes that the affidavit explains that another large shipment of cocaine was anticipated within 10 days (<u>see</u> paragraph 101), and the warrant was not executed until that "triggering event" occurred.  Accordingly, defendant's motion to suppress fails for this reason as well.

be asking this Court to look beyond the "four corners" of the affidavit. Defendants have the burden of substantiating that such an inquiry is appropriate, and as discussed below in Section E, they have failed to meet this burden.

### D.   The Search Warrant for 1980 Miles Road Was Supported by Probable Cause

In evaluating the propriety of the issuance of a search warrant, the law is well settled that this Court "exercise[s] only a deferential review of the initial probable cause determination made by the magistrate." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993), citing Illinois v. Gates, 462 U.S. 213, 236 (1983). The "supporting affidavit must be read in its entirety and in a common sense and nontechnical manner. Conley, 4 F.3d at 1206, citing Gates, 462 U.S. at 230-31). The "task of the issuing magistrate is simply to make a practical, common sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238; accord United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000).

The Supreme Court has stressed that "'[a] magistrate's determination of probable cause should be paid great deference by reviewing courts.'" Gates, 462 U.S. at 236 (citation omitted).

> [T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a "fair probability that contraband or evidence of

> a crime will be found in a particular place," a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.

Conley, 4 F.3d at 1205 (citations and footnote omitted); accord Whitner, 219 F.3d at 296 ("To uphold the magistrate judge's probable cause determination, we must determine only that the judge had a substantial basis for finding that drug-related evidence would be found in [the place to be searched]."). In ruling on this issue, "the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2000)(citation omitted).

Significantly, "a reviewing court **may not** conduct a de novo review of a probable cause determination." Conley, 4 F.3d at 1205 (citation omitted; emphasis added). Thus, "[e]ven if a reviewing court would not have found probable cause in a particular case, it must nevertheless uphold a warrant so long as the issuing magistrate's determination was made consistent with the minimal substantial basis standard." Id. (citation omitted). As the Third Circuit has explained:

> In reaching our conclusion, we recognize that a different magistrate judge might have found the affidavit insufficient to support a warrant. However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provided a sufficient basis for the decision the magistrate judge actually made.

Id., quoting United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993); accord Gates, 462 U.S. at 238-39 (reviewing court's role is simply to ensure "that the magistrate had a substantial basis for concluding that probable cause existed").

Such deference to the initial probable cause determination "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983).  However, it does mean that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965); United States v. Jones, 994 F.2d at 1051.

Probable cause, as the Supreme Court notes, "is a fluid concept turning on an assessment of probabilities in a particular factual context not readily, or even usefully reduced to a neat set of legal rules." Gates, 462 U.S. at 232.  When presented with an application for a search warrant:

> The task of the issuing magistrate is simply to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him...there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Gates, supra, 462 U.S. at 238-39.[9]  The issuing authority, in

---

[9]    The Courts have broadly defined the parameters of probable cause. While it requires more than an unfounded suspicion, courts have repeatedly explained that probable cause requires a lesser showing than the rigorous evidentiary standards

making a probable cause determination, is permitted to draw reasonable inferences from the facts set forth in an affidavit. Jones, 994 F.2d at 1056.

Moreover, even if this Court were to conclude that probable cause was lacking for the search warrant for 19810 Miles Road – which is contrary to the government's position – suppression is not warranted here because the officers and agents relied in good faith upon the warrants, and their reliance was objectively reasonable. Hodge, 246 F.3d at 309.

It is the magistrate's responsibility to determine whether the information contained in the officer's affidavit establishes probable cause and, if so, to issue a warrant in conformity with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.  "Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."  United States v. Leon, 468 U.S. 897, 921 (1984), quoting Stone v. Powell, 428 U.S. 465, 498 (1976).

---

employed in trial proceedings.  In Gates, 462 U.S. at 235, the Supreme Court explained that probable cause is less demanding than the evidentiary standards of beyond a reasonable doubt, preponderance of the evidence, or even a prima facie case -- all that is required is a "fair probability" that the asserted contention is true.  It is particularly important to note that probable cause is a lower standard than "preponderance of the evidence," which is defined as the amount of evidence that makes a contention more likely true than not.  See, e.g., Blacks Law Dictionary.

In other words, "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has 'acted in good faith in conducting the search.'" <u>Leon</u>, 468 U.S. at 922, quoting <u>United States v. Ross</u>, 456 U.S. 798, 823 n.32 (1982); <u>accord</u> <u>United States v. Stearn</u>, 597 F.3d 540, 561 (3d Cir. 2010) ("Ordinarily, the 'mere existence of a warrant ... suffices to prove that an officer conducted a search in good faith,' and will obviate the need for 'any deep inquiry into reasonableness.'") (citations omitted); <u>United States v. Williams</u>, 3 F.3d at 74. "Suppression therefore is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." <u>Id.</u>[10]

When viewed pursuant to the foregoing legal standards, it is clear that defendants' motion to suppress fails as a matter of law. A lengthy and detailed affidavit was submitted in support of the warrant for the garage. The affidavit was supported by probable cause. And the agents relied in good faith on the issuance of the warrant by a neutral and detached judicial

---

[10]   There are 4 narrow instances when an officer's reliance on a warrant is not reasonable: "(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or (4) when the warrant was so facially deficient that it failed to particularize the place to be search or the things to be seized." <u>United States v. $92.422.57</u>, 307 F.3d 137, 146 (3d Cir. 2002). None apply here.

magistrate.

### E.    There is no Basis for a Franks v. Delaware Hearing

Because the defendants allude to false statements in the affidavits[11] and it is not clear if this forms part of their argument for suppression, the United States is compelled to address the area of the law dealing with false statements in affidavits for search warrants.  Such claims are governed by the Supreme Court's decision in Franks v. Delaware, 438 U.S. 154 (1978).  There, the Court held that a defendant may attack a search warrant if it was procured through false information.  Id. at 171.

This does not mean "that every fact recited in the warrant affidavit [must] necessarily [be] correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily."  Id. at 165. As the Franks Court recognized, to be successful, a defendant must point to something more than just innocent errors and muddled facts in the affidavit.  Id. at 171-72.

---

[11]   See Doc. No. 25 at Crim. No. 10-21, p. 4 ("The affiant omitted from his affidavit the fact that these telephone calls took place several months before the June 11 stop.  The affiant also misstated that Mr. Paul claimed he was traveling to Cleveland, which is not true - Mr. Paul stated that he was traveling to Columbus.").

That "something more" has long been memorialized in a two-part test, each part of which must be proven by a preponderance of the evidence. Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997); United States v. Calisto, 838 F.2d 711, 714 (3d Cir. 1988). First, the defendant must prove that the affiant "knowingly and intentionally, or with reckless disregard for the truth," made false or misleading statements in the warrant affidavit. Sherwood, 113 F.3d at 399. Second, the defendants must demonstrate that these statements were material, or necessary to the finding of probable cause. Id. at 399. When both factors are present, the Fourth Amendment requires exclusion of the fruits of the search just as though probable cause was lacking on the face of the warrant itself. United States v. Frost, 999 F.2d 737, 742-43 (3d Cir. 1993), citing Franks, 438 U.S. at 155-56.

Before a defendant can establish this at a hearing, however, they must first make "a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, ... included by the affiant in the warrant affidavit." Franks v. Delaware, 438 U.S. at 155-56. In order to make a substantial preliminary showing, "a defendant must come forward with `allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof.'" United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir. 1993), quoting Franks v. Delaware, 438 U.S. at 171). Vague or conclusory allegations of falsity or reckless disregard are insufficient. Harvey, 2 F.3d at 1323-24

(defendant's failure to offer contradictory evidence to affidavit's factual assertions did not satisfy offer of proof requirement).

If "the defendant makes the requisite substantial showing for a <u>Franks</u> hearing and then, at that hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause." <u>United States v. Brown</u>, 3 F.3d 673, 676 (3d Cir. 1993).

Here, the defendants have failed to make such a substantial preliminary showing. Instead, they offer merely bald allegations and conjecture. For this reason, the defendants are not entitled to a hearing, and their motion to suppress should be denied outright.

### F.   <u>Conclusion</u>

The defendants lack "standing" to challenge to search warrant executed at 19810 Miles Road. Even if the defendants could prove standing, upon review of the affidavit, it is clear that the warrant was supported by probable cause under the standards set forth above, and the officers relied, in good faith, on the issuance of the warrant by a neutral and detached judicial magistrate. The warrant was not "anticipatory", but rather contained probable cause for the search of 19810 Miles Road within the time frame allotted by the Magistrate Judge - regardless of

any "triggering event".   Although not specifically requested, in the event that the defendants are requesting a <u>Franks</u> hearing, they have not met their burden.

> **4.   Motion to Suppress, Brief in Support, and Supplemental Motion to Suppress (Dkt. Nos. 313, 314, and 333)**
>
> > **A.   Since direct connect (push-to-talk) calls are by definition wire Communications, those calls were properly intercepted.**

Defendants House and Blackwell seek to suppress the July 2009 "push-to-talk" communications over telephone number 323-208-0259, together with any evidence derived from these interceptions (DKt. No. 314, p. 2).   As explained below, "push-to-talk" communications are wire communications, the interception of wire communications was authorized by a federal District Court order, and the motion to suppress should be denied.

As a threshold matter, Title 18, United States Code, Section 2518(10)(a) carefully restricts the grounds upon which suppression of a Title III intercept would be warranted.   Suppression is appropriate only in three circumstances:   "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a).

Thus, the law is well-settled that not every failure to comply fully with any requirement provided in Title III would

render the interception unlawful. Suppression is required only for a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures. <u>United States v. Donovan</u>, 429 U.S. 413 (1977). <u>Accord</u> <u>United States v. Giordano</u>, 416 U.S. 505 (1974); <u>United States v. Chavez</u>, 416 U.S. 562 (1974).[12] <u>See also</u> <u>United States v. Radcliff</u>, 331 F.3d 1153 (10th Cir. 2003) ("Wiretap orders that fail to comply with the mandate of 18 U.S.C. 2518(4)(d) that the order specify the identity of the Department of Justice officials who authorized the applications are facially insufficient under 18 U.S.C. § 2518(10)(a)(ii), but because these are technical defects that do not undermine the purpose of the statute or prejudice the defendant, the district court's denial of suppression is affirmed. The Tenth Circuit joins the Third, Fifth, Sixth, Seventh, Eighth and Ninth Circuits in holding that the Supreme Court's holdings in <u>United States v. Chavez</u>, 416 U.S. 562 (1974), and <u>United States v. Giordano</u>, 416 U.S. 505 (1974), that non-substantive violations of Title III do not require suppression of wiretaps found "unlawful" under 2518(10)(a)(i), also applies to wiretap orders found to be facially insufficient under 2518(10)(a)(ii).").

---

[12] Thus, for example, the appropriate sanction for failure to report on progress of electronic eavesdropping (a clone pager), required by court order, is the discontinuance of eavesdropping authorization, rather than suppression of evidence. <u>United States v. Benjamin</u>, 72 F. Supp.2d 161 (W.D.N.Y. 1999).

For example, with respect to any challenge as to probable cause, the law is clear that suppression seldom should be ordered:

> [E]ven if the reviewing court determines that probable cause was lacking, the drastic remedy of suppression is proper only where (1) the judicial officer issuing the warrant abandoned his or her detached, neutral role, or (2) the agent was dishonest or reckless in preparing the affidavit supporting the issuance of the wiretap order, or (3) the agent's reliance on the warrant was not objectively reasonable. United States v. Leon, 468 U.S. 897 (1984).

United States v. Ruggerio, 824 F. Supp. 379, 400 (S.D.N.Y. 1993). As the Sixth Circuit explained in United States v. Corrado, 227 F.3d 528, 539 (6th Cir. 2000):

> In reviewing the validity of an electronic surveillance order, we will accord "great deference" to the determinations of the issuing judge. See United States v. Alfano, 838 F.2d 158, 162 (6th Cir. 1988). "Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant." Id.

Defendants' motion to suppress must be evaluated pursuant to these stringent standards. Further, as explained below, the interception of "push-to-talk" was lawful and authorized for the following reasons.

The July 8, 2009, application and order at issue in defendants' motion to suppress sought and obtained permission for the initiation of the interception of **wire communications** over telephone number 323-208-0259. See Government's Appendix Exhibit 3,

which is the application, Order of Court, Order to Service
Provider, and Authorization Memo.

Title 18, United States Code, Section 2510(1), defines "wire
communication" as:

> any aural transfer made in whole or in part through the
> use of facilities for the transmission of communications
> by the aid of wire, cable, or other like connection
> between the point of origin and the point of reception
> (including the use of such connection in a switching
> station) furnished or operated by any person engaged in
> providing or operating such facilities for the
> transmission of interstate or foreign communications or
> communication affecting interstate or foreign commerce.

Further, Title 18, United States Code, Section 2510(18), defines
"aural transfer" as a "transfer containing the **human voice** at any
point between and including the point of origin and the point of
reception." (Emphasis added).

The Department of Justice Operations Services Staff Service
Catalog defines push-to-talk as:

> Push-to-Talk is similar to a walkie-talkie that is
> provided over a cellular phone network. A typical Push-
> to-Talk connection connects almost instantly. One
> significant advantage of Push-to-Talk is allowing a
> single person to reach an active talk group at a button
> press, thus users no longer need to make several calls to
> coordinate with a group. Push-to-talk calls are half-
> duplex communications — while one person speaks, the
> other(s) listen. Traditional mobile phone networks and
> devices utilize full-duplex communications, allowing
> customers to call other persons on a mobile or land-line
> network and be able to simultaneously talk and hear the
> other party. Such communications require a connection to
> be started by dialing a phone number and the other party
> answering the call; the connection remains active until
> either party ends the call, or the connection is dropped
> due to signal loss or a network outage. Such a system
> does not allow for casual transmissions to be sent to
> other parties on the network without first dialing them

up, as is provided by two-way radios. Full-duplex operation on mobile phone networks is made possible by using separate frequencies for transmission and reception.

http://dojnet.doj.gov/jmd/irm/operations/services/voiceservices/push-to-talk.php (See Government's Appendix Exhibit 4).

Sprint/Nextel, the service provider for telephone number 323-208-0259, defines direct connect (i.e. push-to-talk) as "the nationwide two-way radio service that requires network coverage." (http://support.sprint.com/support/article/Know_the_difference_between_Direct_Connect_and_Direct_Talk/case-ba416758-20090618-235538?&INTNAV=SU:SP:HDIB) (See Government's Appendix Exhibit 5).

As the foregoing makes clear, the "push-to-talk" feature of the Sprint/Nextel cellular telephone is an "aural transfer" that falls within the broad definition of a "wire communication."[13] As such, there is no statutory requirement to specifically request authorization for intercepting direct connect (push-to-talk) conversations in a Title III wiretap application or order, and defense counsel has failed to cite any governing legal authority to the contrary.[14]

---

[13] The propriety of this conclusion, and the lawfulness of these interceptions, is further evidenced by the fact that Sprint/Nextel provided agents with the direct connect (push-to-talk) communications without requiring any specific language in the Service Order.

[14] For the benefit of the service provider, the extension

In his Brief to Support Motions to Suppress (Doc. No. 314 at Crim. No. 09-273), defendant House improperly relies upon <u>United States v. Corrales</u>, 2009 WL 1874001 at *2 (D.Kan. June 30, 2009) in support of the proposition that the Court "exclud[ed] because of unfair surprise communications intercepted pursuant to Title III order because possibly intercepted over 'push to talk' function of cellular telephones, which was not specified in the order." **<u>Corrales</u> does not even come close to standing for that proposition (see copy of <u>Corrales</u>, set forth in Government's Appendix Exhibit 7). In fact, the <u>Corrales</u> opinion cited by defendant House does not even mention the concept of Title III; nor does the opinion have anything to do with any Orders of Court regarding wire communications.**

---

applications and orders for telephone number 323-208-0259 did include language (although not required) specifically referencing the interception of direct connect communications. In particular, the application stated: "authorization is also intended to apply to a feature known as 'direct connect/dispatch services' for Target telephone #2 and Target Telephone #4 (i.e. 323-208-0259). This feature of a Sprint Communications telephone functions in the same manner as a two-way radio, and enables a Sprint telephone to communicate with another Sprint telephone by the additional means of the 'direct connect feature.' It is requested that individuals monitoring the interception of wire communications be permitted to intercept direct connect/dispatch services transmissions occurring between target Telephone #2, Target Telephone #4, and other Sprint telephone." (See Government's Appendix Exhibit 6, Application dated 8/5/09). The inclusion of this language in no way supports a finding that the "direct connect" feature falls outside the definition of "wire communications". To the contrary, the extension application and orders merely clarified **for the service provider** that the orders applied to all "wire communications" – including the "direct connect" feature.

During trial, Corrales moved the court to bar the government's introduction of a handwritten document recently prepared by an Agent. <u>Corrales</u>, <u>supra</u> at *2. Over the weekend, the agent had searched the recent call directories on the cell phones of Corrales and another person and prepared a list of numbers and names found on the directories. <u>Id.</u> The cell phones were already in evidence, but it appeared that no search of the directories had occurred during the investigation or anytime prior to the agent's search "which entailed doing nothing more than charging the phones and recording the date, time, number and any name found in the recent calls directory." <u>Id.</u>

Corrales complained of "surprise and prejudice from this late disclosure." <u>Id.</u> Corrales noted that the government produced the phone records subpoenaed from the cell phone service provider, "but the recent calls directory included calls not found on those subpoenaed records." <u>Id.</u> The government indicated "that the additional calls found on the phone may not have been included on the toll records because they were 'direct connections' or 'push to talk' numbers." <u>Id.</u> The Court in <u>Corrales</u> indicated that "whatever the explanation for the discrepancy, both sides appeared to be surprised by the results of the agent's search." <u>Id.</u>

"The court initially sustained Corrales' motion and precluded the government from introducing testimony from the agent that he had searched the cell phones' recent calls directories over the

weekend and then prepared a written list of those calls." Id.  The
court noted that the "prejudice to the defendant from the late
search and disclosure outweighed the propriety of disclosing the
search and its written results." Id.  The court, however, observed
"that the evidence of these recently made phone calls had already
been admitted when the cell phones were admitted into evidence."
Id.

The government later asked the court to reconsider, and the
court did so. Id.  The Corrales Court "did not modify its ruling
that the agent could not testify about his weekend search of the
recent calls directories or introduce any documents prepared as a
result of those searches." Id.  What the court did instead,
however, was "not preclude the agent from testifying about the
features of the admitted cell phones and to demonstrate for the
jury what information is stored in those cell phones." Id.  The
Court indicated that Corrales' counsel was "in no position to argue
surprise over the propriety of such testimony." Id.  The Court
noted that "the cell phones were seized at the time of the
defendant's arrest and were known to be part of the government's
evidence as shown in different reports" and that there was "nothing
of record to suggest that the defendant was denied any requested
opportunity to inspect the cell phones prior to trial." Id.  The
Court went on to write that "as far as the government's actual
reports on the cell phones, none of them represented that the
recent calls directories had been searched." Id.  Therefore,

"since the phones were already in evidence, the court finds no impropriety nor unfair prejudice to the defendant in Agent Skelton's testimony describing the cell phones' features and contents and demonstrating their use." Id.

**The government fails to see how citing this case is at all persuasive to this Court in deciding the propriety of the interception of "push to talk" communications in the instant case. Moreover, defendant House completely misconstrues the court's holding in Corrales.**

Since by definition direct connect (push-to-talk) communications are **wire communications** and authorization for wire communications was properly obtained for telephone number 323-208-0259, all direct connect (push to talk) communications over that number were properly and legally intercepted. For these reasons, the defendants' motion to suppress these calls should be denied.

**B. Agents did not "track" defendant House without Court Approval[15].**

---

[15]

Defendant Blackwell filed a motion for Joinder to Defendant Erin House's Motion to Suppress Illegally Obtained Wiretap and Tracking Location Evidence and All Direct and Indirect Fruits(Doc. No. 348 at Crim. No. 09-273).  Defendant Blackwell would not have standing to challenge the contemporaneous cell tower site information obtained with respect to the cellular telephone utilized by Defendant House.  Defendant Blackwell indicates in the joinder request that he may "supplement this motion with additional facts currently being researched due to additional discovery provided to the defendant by the government."  As of this date, no supplement has been filed by defendant Blackwell.

Defendant House contends that "there is no dispute that the government tracked Mr. House in late August of 2009 without a court order."  Defendant House goes on to allege that "there is also no dispute that the tracking was over an extended period of time, and was used not just to confirm his travel over public roads, but his whereabouts and travel patterns over extended continuous periods." Defendant House further states that the government has relied on such in subsequent applications.  He makes these allegations against the government despite having been provided with the applications, affidavits, and Orders of Court for the period in question (i.e.  Late August 2009) **prior** to the filing of the instant motion.  Nertheless, defendant House has urged this Court to suppress any "evidence of tracking Mr. House's whereabouts at any point after August 14, 2009, and suppressing the direct and indirect fruits of any and all such evidence."

Defendant House's insistence that the government "tracked" defendant House's whereabouts without an "order" is simply **false**. Defendant House points to pages 30-31 of the affidavit of probable cause submitted in support of Case No. 09-444M (which is attached to defendant's Motion to Suppress filed at Doc. No. 313 at Crim. No. 09-273; and is further attached in the Government's Appendix as Exhibit 8).

Although defendant House does not cite with specificity the language that he takes issue with, the government assumes it is the

following: "Ping technology also revealed that House remained in California until August 16, 2009 when his cellular telephone was 'hitting off' or signaling off of a cell tower in the state of Arizona" (p. 30 of the affidavit filed at 09-444M) and "Cell site analysis over (562)307-2726 revealed that during the time of the calls, House's cell phone was 'hitting off' or signaling off of a cell tower in the vicinity of St. Louis, Missouri." (p. 31 of the affidavit filed at 09-444M).

During the time frame of July 15, 2009 through September 13, 2009, agents of the Federal Bureau of investigation were authorized to obtain contemporaneous cell tower site information on (562)307-2726. The application, affidavit, and Orders filed at 09-371M were provided to counsel for defendant House **prior** to him filing the instant motion, and on multiple occasions after he filed the instant motion (See Government's Appendix Exhibit 9). As this Court can clearly see from Government's Exhibit 8, agents of the Federal Bureau of Investigation had proper authorization to obtain the cell tower site information that was mentioned by the affiant in the affidavit filed at 09-444M on pages 30 and 31. Moreover, the agents acted in good faith in obtaining this information from Sprint. Consequently, agents did not "track" Mr. House's whereabouts without a court order, and his request to have evidence of "tracking" acquired after August 14, 2009 should be denied.

C. **There is no Basis for a Franks v. Delaware Hearing Regarding the "Photographs Issue"**

At the outset, the government would note that the law is clear that agents did **not** require a warrant to search defendant House's tractor trailer.  If agents have probable cause to search a vehicle, the search is proper -- with or without a warrant. See Maryland v. Dyson, 527 U.S. 465, 467 (1999) (where there is probable cause to search a vehicle, a search is reasonable "'if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'" (citation omitted)).  Special Agent Kopp (in the Northern District of Ohio), however, sought and obtained a warrant to search defendant House's tractor trailer. (A copy of that warrant is set forth in the Government's Appendix as Exhibit 10. ).

Defendant House's counsel has attached an affidavit from himself in an apparent attempt to comply with the "substantial preliminary showing" that must be made in order to garner a Franks hearing.  Here, the defendants have failed to make such a substantial preliminary showing and Mr. Stallings' affidavit in no way meets their burden.  Instead, they offer merely speculative and baseless allegations that the agents would search the vehicle and then decide-after the fact- to procure a search warrant from a magistrate judge (despite the fact that they did not need one in the first place).  During the motion hearing that was held on October 18, 2010, the government prepared a document, which was

entered as Government's Exhibit 1[16].  That document was a demonstrative visual aid for the Court, the defendants, and their counsel.  The government went on to explain how "[i]f you direct the mouse, not click on (the) photo itself, but just point the mouse on the photo, you can see the date. . . on which the photo was taken." (P. 24 of the transcript of the 10/18/10 hearing). At that time, counsel for the government offered to sit down with counsel for the defendants and show them how to view the .jpeg data if they so desired. Id.  In fact, counsel for the government did sit down with counsel for defendant House and showed him how the information regarding **date and time** that the photographs were taken is embedded within each .jpeg file.  To date, however, defendant House has not withdrawn this meritless issue despite the government's efforts to confirm that the photograph(s) in question were **not** taken on September 13, 2009 and agents most certainly did **not** search the vehicle prior to execution of the search warrant.

As noted above, defendants House has not met his burden and for this reason are is entitled to a Franks hearing and the motion to suppress should be denied outright.

### 5.  Request for Disclosure of Evidence by Defendants

---

[16] Although attached to this Court's Minute Entry filed at Dkt. No. 340 at Crim. No. 09-273, another copy is set forth in the Government's Appendix at Exhibit 11).  The government has also attached to its Appendix at Exhibit 12, "exhibit 3" that was attached to the Minute Entry at Dkt. No. 340.  This document is a an FBI report authored by Special Agent Kopp indicating that the search of defendant House's tractor trailer took place on September 15, 2009, **not** September 13, 2009.

The   United   States   hereby   requests   disclosure   by
defendants of all evidence and information subject to disclosure
pursuant to Fed. R. Crim. P. 16(b)(1).


                              Respectfully submitted,

                              DAVID J. HICKTON
                              United States Attorney

                   By:   s/ Amy L. Johnston
                         AMY L. JOHNSTON
                         Assistant U.S. Attorney
                         PA ID No. 201137
                         U.S. Attorney's Office
                         U.S. Post Office & Courthouse
                         700 Grant Street, Suite 4000
                         Pittsburgh, PA  15219
                         Office:  412-644-3500
                         Fax:     412-644-2645
                         Amy.Johnston2@usdoj.gov

                         s/Troy Rivetti
                         Troy Rivetti
                         Assistant U.S. Attorney
                         U.S. Post Office & Courthouse
                         Suite 4000
                         Pittsburgh, PA  15219
                         (412)644-3500 (Phone)
                         (412)644-2645 (Fax)
                         Troy.Rivetti@usdoj.gov
                         PA ID No. 56816